# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

**CASE NO.:**

**MICHELIN D. MCKEE, as Personal**
**Representative of the Estate of**
**SALAYTHIS MELVIN the Deceased,**
    **Plaintiff,**

**Vs.**

**DEPUTY JAMES MONTIEL, in his individual**
**Capacity and as an agent of ORANGE COUNTY**
**SHERIFFS OFFICE; DEPUTY MARCUS BULLOCK,**
**in his individual Capacity and as an agent of the ORANGE COUNTY**
**SHERIFFS OFFICE; DEPUTY ERIC R. WHEELER**
**in his individual Capacity and as an agent of the ORANGE COUNTY**
**SHERIFFS OFFICE; DEPUTY JOHN DOE I,**
**in his individual Capacity and as an agent of the ORANGE COUNTY**
**SHERIFFS OFFICE; DEPUTY JOHN DOE II,**
**in his individual Capacity and as an agent of the ORANGE COUNTY**
**SHERIFFS OFFICE and JOHN W. MINA, in his**
**official capacity as ORANGE COUNTY SHERIFF,**
    **Defendants.**

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

**COMES NOW,** the Plaintiff, MICHELIN D. MCKEE, as Personal

Representative of the Estate of SALAYTHIS MELVIN (hereinafter referred to as

"Plaintiff"), by and through his undersigned counsel and sues Defendants,'

DEPUTY JAMES MONTIEL, in his individual capacity and as an agent of the

Orange County Sheriffs Office, (herein after referred to as "Defendant MONTIEL");

DEPUTY MARCUS BULLOCK, in his individual Capacity and as an agent of the

ORANGE COUNTY SHERIFFS OFFICE(herein after referred to as "Defendant BULLOCK"); DEPUTY ERIC R. WHEELER  in his individual Capacity and as an agent of the ORANGE COUNTY SHERIFFS OFFICE(herein after referred to as "Defendant WHEELER"); DEPUTY JOHN DOE I, in his individual Capacity and as an agent of the ORANGE COUNTY SHERIFFS OFFICE(herein after referred to as "Defendant DOE I");  DEPUTY JOHN DOE II, in his individual Capacity and as an agent of the ORANGE COUNTY SHERIFFS OFFICE (herein after referred to as "Defendant DOE II") and JOHN W. MINA, in his official capacity as ORANGE COUNTY SHERIFF and herein requests judgment of this court declaring unconstitutional and unlawful certain actions of the defendants, which resulted in Plaintiff being deprived of his constitutional rights guaranteed by the Fourth and Fourteenth Amendments of the United States Constitution as well as other civil rights guaranteed to the deceased under federal law, and seeks damages from Defendant as compensation for the deprivation of the deceased constitutional rights and other rights guaranteed under federal law, for an award of attorney's fees and authorized by law, all reasonable costs of this action, and for any other further relief that this Court deems just and proper.

## JURISDICTION AND VENUE

1.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§1331, 1332, 1343, and 1367, and venue is properly set in

the United States District Court for the Middle District of Florida pursuant to 28 U.S.C. §1391.

2. The causes of action alleged herein arise from factual allegations occurring in this judicial district.

3. All condition precedent to the filing of this actions have occurred, accrued, or have been waived as a matter of law.

4. On information and belief, it is alleged that the named Defendants resides in this judicial district within Orange County Florida.

## NATURE OF THE ACTION

5. On August 7, 2020, 22-year-old Salaythis Melvin was a patron of the Florida Mall and Dicks Sporting Goods when he was shot in the back and killed without justification by Defendant James Montiel an Orange County Sheriff Deputy who was not in Uniform and also traveling in an undercover vehicle.

6. Salaythis Melvin was an African American male. He had done nothing to justify being shot in the back by Deputy James Montiel. He had done nothing to justify being seized by Deputy James Montiel. James Montiel unjustifiably shot and killed Salaythis Melvin.

7. Plaintiff, MICHELIN D. MCKEE, as Personal Representative of the Estate of SALAYTHIS MELVIN brings this action pursuant to 42 U.S.C. § 1983

to redress the deprivation under color of state law of the rights of her son, as secured by the United States Constitution and the common law of the State of Florida.

## **PARTIES**

8.     Plaintiff, MICHELIN D. MCKEE, as Personal Representative of the Estate of SALAYTHIS MELVIN is presently a resident of Orange County, Florida and at all material times herein was a resident of said county.

9.     The deceased SALAYTHIS MELVIN at all material times herein was a resident of said county.

10.     Defendant, DEPUTY JAMES MONTIEL, is a police officer who is employed by the Orange County Sheriff's Office and is over the age of eighteen (18) and on information and belief is a resident in or is employed in Orange County, Florida and is being sued in his individual capacity and as an agent of the Orange County Sheriff's Office.

11.     Defendant, DEPUTY MARCUS BULLOCK, is a police officer who is employed by the Orange County Sheriff's Office and is over the age of eighteen (18) and on information and belief is a resident in or is employed in Orange County, Florida and is being sued in his individual capacity and as an agent of the Orange County Sheriff's Office.

12. Defendant, DEPUTY ERIC WHEELER, is a police officer who is employed by the Orange County Sheriff's Office and is over the age of eighteen (18) and on information and belief is a resident in or is employed in Orange County, Florida and is being sued in his individual capacity and as an agent of the Orange County Sheriff's Office.

13. Defendant, DEPUTY JOHN DOE I, is a police officer who is employed by the Orange County Sheriff's Office and is over the age of eighteen (18) and on information and belief is a resident in or is employed in Orange County, Florida and is being sued in his individual capacity and as an agent of the Orange County Sheriff's Office

14. Defendant, DEPUTY JOHN DOE II, is a police officer who is employed by the Orange County Sheriff's Office and is over the age of eighteen (18) and on information and belief is a resident in or is employed in Orange County, Florida and is being sued in his individual capacity and as an agent of the Orange County Sheriff's Office.

## **GENERAL ALLEGATIONS**

15. On August 7, 2020, Deputies JAMES MONTIEL was part of the Orange County Sheriff Warrant Unit that was serving an arrest warrant on Vanshawn Sands in Orange County Florida.

16.   On August 7, 2020, between at approximately 12pm and 1pm Deputies JAMES MONTIEL along with several other members of the Orange County Sheriff Office Warrant Unit converged at the Florida Mall near the Dicks Sporting Goods attempting to execute an arrest warrant on Vanshawn Sands in undercover cars at a high rate of speed. The cars did not have any identifiable marks that would indicate they were law enforcement vehicles. In fact the cars were being used as surveillance vehicles to watch Mr. Sands all morning and he had not notice all morning that there was law enforcement officers in the vehicles or that the vehicles belonged to law enforcement officers.

17.   The Officers had been following Mr. Sands all morning and had several opportunities to apprehend Mr. Sands safely and without the endangering the lives of others such as Salaythis Melvin but chose not to do so.

18.   The officers intentionally waited until Mr. Sands had other individuals with him which included Mr. Melvin, another male, and a female. Although Mr. Sands could have been apprehended without putting anyone in harms way. Deputy James Montiel, Marcus Bullock, Eric Wheeler, John Doe I, and John Doe II conspired and came up with a plan to wait until other individuals were with Mr. Sands so they could violate those

individual rights by unlawfully seizing those individuals while arresting Mr. Sands in an attempt to gather intel.

19.  This conspiracy also lead to the unlawful seizure of Vanshawn Sands girlfriend who did not have a warrant for her arrest and Salaythis Melvin who also did not have a warrant for his arrest and was shot in the back and killed as a result of the unlawful seizure which is supported and is a policy of the Orange County Sheriff's Office.

20.  Mr. Sands had come voluntarily to the police station and spoken to law enforcement regarding the case that was the subject of the warrant.

21.  The warrant that was executed on Mr. Sands on August 7, 2020, was for a charge of a possession of a firearm by a convicted felon.

    a.  Mr. Sands possessed and used that firearm to defend himself when he was a victim of a drive by shooting in which the police cleared him of the shooting because they concluded that Mr. Sands use of the gun was in self-defense.

    b.  The case that resulted from the warrant that was served on Vanshawn Sands that cost Salaythis Melvin his life on August 7, 2020, was dropped against Vanshawn Sands on June 14, 2021.

22.  On August 7, 2020, while Melvin, Sands, and two other individuals were exiting the Dicks Sporting Goods and walking towards the vehicle they

had arrived in members of the Orange County Sheriffs Office converged on them in several undercover cars without any identifiable, lights, sirens, or law enforcement insignia.

23. They converged Melvin, Sands, and the two other individuals in the parking lot at a high rate of speed and all of the vehicles had dark window tints.

24. Because Mr. Sands had recently been the victim of a drive by shooting, Mr. Sands, Mr. Melvin, and the other individuals in the group immediately took off running for their lives thinking they were about to be attacked and shot at as retaliation for what happen with Mr. Sands.

25. Mr. Melvin, Mr. Sands, and the other individuals had no idea the occupants in the vehicles converging on them were law enforcement officers.

26. Mr. Melvin never saw anyone exit the vehicle prior to being shot in the back.

27. Mr. Melvin took off running and ran past Dicks Sporting Goods and as he past Dicks Sporting Goods he was nearly hit by a truck that was speeding towards him that caused him to change his path towards the parking lot.

28. Mr. Melvin was never running towards Deputy James Montiel and never saw James Montiel.

29.   By the time any of the officers exited their vehicles they were approximately 75 to 100 yards behind Mr. Melvin.

30.   Mr. Melvin did not see any of the officers exit their under-cover vehicle.

31.   James Montiel exited his vehicle and Mr. Melvin was at least 75 yards in front of him and Mr. Melvin never saw James Montiel until after James Montiel shot him in the back.

32.   James Montiel did not identify himself as a law enforcement officer.

33.   James Montiel exited his vehicle kneeled down and shot Mr. Melvin in the back for no reason.

34.   At the time James Montiel shot Salaythis Melvin he did not have a warrant for his arrest, no uniform, and did not identify himself as a law enforcement officer.

35.   Salaythis Melvin was not the target of their investigation.

36.   Vanshawn Sands was the target of their investigation and the person they had a warrant to arrest, and he was already in custody when Montiel shot Melvin.

37.   At the time James Montiel shot Salaythis Melvin he did not know who Salaythis Melvin was other than the fact that he was a black man that had not committed any crimes and was running in fear for his life.

38.　At the time James Montiel shot Salaythis Melvin he did not know whether Salaythis Melvin was a licensed gun owner.

39.　At the time James Montiel shot Salaythis Melvin he did not see a firearm in Salaythis Melvin possession.

40.　Prior to shooting Salaythis Melvin Deputy James Montiel was unaware that Salaythis Melvin had broken any laws.

41.　At the time James Montiel shot Salaythis Melvin he was unaware that Salaythis Melvin had broken any laws.

42.　James Montiel unlawfully detained Salaythis Melvin when he shot Salaythis Melvin.

43.　James Montiel did not render any aid to help Salaythis Melvin after he shot him.

44.　The other Deputies present, Marcus Bullock, Eric Wheeler, John Doe I, and John Doe II, did not render any aid for nearly a minute and a half after Salaythis Melvin was shot and clearly in distress and was not a threat.

45.　Instead of rendering aid James Montiel, Marcus Bullock, Eric Wheeler, John Doe I, and John Doe II, threatened to shoot Salaythis Melvin again while he was on the ground fighting for his life and clearly not a threat causing even further delay in calling an ambulance to save Salaythis Melvin life.

46.   Marcus Bullock, Eric Wheeler, John Doe I, and John Doe II did not stop James Montiel from using deadly force on Salaythis Melvin who was not a suspect in any crime and did not have a warrant for his arrest and was running away in fear of possibly being shot and killed by the occupants of the cars with dark tinted windows speeding through the parking lot at a high rate of speed and converging on them and one of the cars nearly running him over.

47.   Marcus Bullock, Eric Wheeler, John Doe I, and John Doe II had a duty intervene and stop James Montiel from shooting Salaythis Melvin who was not posing a threat to any of the officers and was just fleeing from the officers because he did not know they were officers.

48.   Marcus Bullock, Eric Wheeler, John Doe I, and John Doe II did not do anything to stop Deputy James Montiel from shooting Salaythis Melvin in the back even though Salaythis Melvin did not pose a threat to him or anyone else.

49.   Salaythis Melvins family was not notified that Salaythis was shot until between 9pm and 10pm that night.  Approximately 9 to 10 hours after he was shot and already died.

50.   Before Salaythis family and specifically his mother was notified that Salaythis had been shot and killed nearly 9 to 10 hours later.  Deputy

Marcus Bullock drafted an arrest affidavit and filed it placing Salaythis Melvin under arrest for the offense of Aggravated Assault on a Law Enforcement Officer (with a firearm)

51. Orange County Sheriff John Mina Fosters a Culture of Recklessness by adopting a policy in which his officers execute warrants in undercover vehicles and without unforms that allows his officers to be mistaken for criminals.

52. This creates a very dangerous situation for the alleged suspect, the officers, and the community and can lead to innocent people losing their lives like Mr. Melvin.

53. Along with this policy Orange County Sheriff Office has a policy in which the officers executing warrants and or surveilling suspects are not all outfitted with cameras and have a pattern of using excessive force and killing young black men while executing arrest warrants or apprehending suspects.

a. On January 5, 2010, members of the Orange County Sheriff's Office while surveilling Torey Breedlove who was 27 years old at the time had an opportunity to apprehend Mr. Breedlove without the use of deadly force but instead chose to use deadly force to apprehend Mr. Breedlove who did not pose a threat to the Officers and who was also unarmed.

  i. Mr. Breedlove was unarmed when he was shot at 130 times by members of the Orange County Sheriff's Office and hit at least 20 times.

  ii. Conveniently there was no body camera footage of the shooting and the footage from the complex where the shooting took place was not preserved.

b. On February 28, 2017, some of the same Officers of the Orange County Sheriffs that took the life of Mr. Breedlove were involved in taking the life of another young man while executing an arrest warrant.

  i. Christopher Redding while unarmed was shot twice in the back of the head while officers from the Orange County Sheriff's Office were executing an arrest warrant.  At the time Mr. Redding was shot twice n the back of the head he was unarmed and had been detained by two officers who were standing on both of his arms while was laying on his belly and he had already been shot seven times.  However, an Orange County Sheriff Deputy still shot him in the back of the head twice immediately ending his life.

  ii. None of the deputies in the Redding case that were executing the warrant had on a body camera.

54.   Only one officer out of about six or seven officers that were present on August 7, 2020, when Salaythis Melvin was killed had any footage on their camera that showed Salaythis Melvin being shot by Montiel and it is not the best angle and only captures part of what occurred.

55.   The Officer that placed Vanshawn Sands under arrest was actually facing the shooting when it occurred but for some reason the only available footage from his body camera is after the shooting has already occurred.

56.   The John Mina in his official Capacity as Orange County Sheriff did not release any body camera footage until 11 days after the shooting occurred.

57.   James Montiel allegedly was not assigned with a body camera and the other officer's camera for some reason did not capture the shooting.

58.   The footage from the mall surveillance camera for some reason is not visible and the camera that was directly in view of the shooting allegedly was not functioning.

59.   The day before Deputy James Montiel shot and killed Salaythis Melvin a hearing was set by his ex-wife for a Motion for Contempt/Enforcement of Final Judgment for failing to comply with marital settlement agreement pertaining to spousal support for the wife.

60. Deputy James Montiel was embroiled in a financial dispute with his former wife at the time that he shot Salaythis Melvin in the back. This dispute was being litigated in court at the time of the shooting.

61. As a direct result of the policies, procedures and customs of the Orange County Sheriff's Office, James Montiel was killed and it can be reasonably said that the failure to adequately train, supervise, reprimand, or investigate the use of excessive force by the Orange County Sheriff's Office upon its citizens was the moving force behind the death of Salaythis Melvin.

62. Salaythis Melvin used deadly force without the requisite factual basis for its use

and at the time they used such force, the excess of the force was clearly established under both State and Federal laws.

63. In committing the acts complained of herein, Defendants acted under color of state law to deprive Plaintiff of certain constitutionally protected rights under the Fourth and Fourteenth Amendments to the Constitution of the United States including, but not limited to the right to be free from excessive use of force by persons acting under color of state law.

64. As a direct and proximate result of the violation of plaintiff's constitutional rights by the Defendants, Plaintiffs suffered general and special damages as alleged in this Complaint and is entitled to relief under 42 U.S.C. §1983.

65.     The conduct of MONTIEL was willful, malicious, oppressive and/or reckless, and was of such a nature that punitive damages should be imposed in an amount commensurate with the wrongful acts alleged herein.

## CAUSES OF ACTION

## FEDERAL CONSTITUTIONAL CLAIMS

### COUNT I
### 42 U.S.C. §1983
### EXCESSIVE FORCE IN VIOLATION OF FOURTH AND FOURTEENTH AMENDMENTS

(Plaintiff, MICHELIN D. MCKEE, as Personal Representative of the Estate of SALAYTHIS MELVIN claim against Defendant, DEPUTY JAMES MONTIEL, in his individual capacity)

66.     COMES NOW, Plaintiff, by and through its undersigned counsel, and sues Defendant DEPUTY JAMES MONTIEL, in his individual capacity and in support thereof, states as follows:

67.     Plaintiff realleges the allegations contained in paragraphs 1 through 65, as if fully set forth herein.

68.     SALAYTHIS MELVIN had the right under the United States Constitution to be free from the use of excessive force.

69. The actions of Defendant, DEPUTY JAMES MONTIEL amount to deliberate indifference to the rights of SALAYTHIS MELVIN to be free of excessive force and unreasonable seizures under the Fourth and Fourteenth Amendments to the Constitution of the United States.

70. Defendant, DEPUTY JAMES MONTIEL shot SALAYTHIS MELVIN in the back while he was running in fear for his life and not posing a threat to DEPUTY JAMES MONTIEL or any other law enforcement officer or citizen.

71. Defendant, DEPUTY JAMES MONTIEL, acted with deliberate indifference to SALAYTHIS MELVIN'S rights and as a direct and proximate result of the violation of his constitutional right to be free from the use of excessive force, SALAYTHIS MELVIN was killed and Plaintiff, MICHELIN D. MCKEE, as Personal Representative of the Estate of SALAYTHIS MELVIN is entitled to relief under 42 U.S.C. §1983. This includes but is not limited to loss of his comfort, companionship, mental pain and suffering, funeral expenses, the future value of the estate, cost, interest and expenses of suit, and any other relief to which the Plaintiff may be entitled, and all other damages associated with excessive force used against the SALAYTHIS MELVIN.

72.     PLAINTIFF has retained the undersigned counsel to bring this action under 42 U.S.C. §1983 and is entitled to recover from Defendant, DEPUTY JAMES MONTIEL a reasonable fee for said counsel pursuant to 42 U.S.C. §1988.

WHEREFORE, PLAINTIFF, MICHELIN D. MCKEE, as Personal Representative of the Estate of SALAYTHIS MELVIN prays for damages against Defendant, DEPUTY JAMES MONTIEL in his individual capacity, and an award of PLAINTIFF'S attorney's fees.  In addition, Plaintiff requests punitive damages against Defendant, DEPUTY JAMES MONTIEL, in his individual capacity, for his conduct, which would deter him from such tortious conduct in the future.

## COUNT II
## 42 U.S.C. § 1983 - FOURTH AMENDMENT AND FOURTEENTH AMENDMENT
(Plaintiff, MICHELIN D. MCKEE, as Personal Representative of the Estate of SALAYTHIS MELVIN claim against Defendant, DEPUTY MARCUS BULLOCK, in his individual capacity)

73.     COMES NOW, Plaintiff, by and through its undersigned counsel, and sues Defendant DEPUTY MARCUS BULLOCK, in his individual capacity and in support thereof, states as follows:

74.     Plaintiff realleges the allegations contained in paragraphs 1 through 65, as if fully set forth herein.

75.     The conduct of DEPUTY MARCUS BULLOCK violated the U.S. Constitution.

76. At all material times, DEPUTY MARCUS BULLOCK was acting under the color of state law as an agent and employee of the Orange County Sheriff's Office.

77. At all material times, DEPUTY MARCUS BULLOCK was acting in the course and scope of his duties as an Orange County Sheriff's Deputy at the time he stood by while JAMES MONTIEL shot and killed Salaythis Melvin.

78. At all material times, DEPUTY MARCUS BULLOCK had no reason to believe that he or JAMES MONTIEL were in imminent danger or fear of imminent bodily harm from Salaythis Melvin who was running away in fear and posed no threat.

79. Every reasonable officer would have known that using deadly force on a person that is not a suspect and is running away and posing no threat of harm to anyone constitutes excessive force in violation of the U.S. Constitution.

80. Every reasonable officer would have known that failing to intervene with respect to his fellow officer's use of deadly force on a person running away that is not a person of interest and posing no threat of harm to anyone violates the U.S. Constitution.

81.   DEPUTY MARCUS BULLOCK observed and was in a position to intervene to stop DEPUTY JAMES MONTIEL use of excessive and unreasonable deadly force against SALAYTHIS MELVIN.

82.   Every reasonable officer would have known that failing to immediately render emergency aid to someone who poses no threat of harm and on whom a fellow officer had used lethal force violates the Fourth and Fourteenth Amendments of the U.S. Constitution.

83.   DEPUTY MARCUS BULLOCK 's conduct was objectively unreasonable.

84.   As a result of DEPUTY MARCUS BULLOCK 's conduct, SALAYTHIS MELVIN was shot in the back by DEPUTY JAMES MONTIEL, experienced severe pain and suffering and emotional distress, and died.

85.   As a direct and proximate result of these wrongful acts and omissions, SALAYTHIS MELVIN'S next of kin have suffered pecuniary loss, including medical and funeral expenses, loss of kinship, aid, counsel, guidance, advice, assistance, and protection and support.

86.   The acts and omissions of DEPUTY MARCUS BULLOCK were intentional, wanton, malicious, reckless, oppressive, and/ or showed callous indifference to the federally protected rights of SALAYTHIS MELVIN.

WHEREFORE, PLAINTIFF, MICHELIN D. MCKEE, as Personal Representative of the Estate of SALAYTHIS MELVIN, demands judgment against Defendant, DEPUTY MARCUS BULLOCK for compensatory and punitive damages, costs, disbursements, attorney's fees, interest and for any other relief that the Court deems fair and just.

## COUNT III
## 42 U.S.C. § 1983 - FOURTH AMENDMENT AND FOURTEENTH AMENDMENT

(Plaintiff, MICHELIN D. MCKEE, as Personal Representative of the Estate of SALAYTHIS MELVIN claim against Defendant, DEPUTY ERIC WHEELER, in his individual capacity)

87. COMES NOW, Plaintiff, by and through its undersigned counsel, and sues Defendant DEPUTY ERIC WHEELER, in his individual capacity and in support thereof, states as follows:

88. Plaintiff realleges the allegations contained in paragraphs 1 through 65, as if fully set forth herein.

89. The conduct of DEPUTY ERIC WHEELER violated the U.S. Constitution.

90. At all material times, DEPUTY ERIC WHEELER was acting under the color of state law as an agent and employee of the Orange County Sheriff's Office.

91.   At all material times, DEPUTY ERIC WHEELER was acting in the course and scope of his duties as an Orange County Sheriff's Deputy at the time he stood by while JAMES MONTIEL shot and killed Salaythis Melvin.

92.   At all material times, DEPUTY ERIC WHEELER had no reason to believe that he or JAMES MONTIEL were in imminent danger or fear of imminent bodily harm from Salaythis Melvin who was running away in fear and posed no threat.

93.   Every reasonable officer would have known that using deadly force on a person that is not a suspect and is running away and posing no threat of harm to anyone constitutes excessive force in violation of the U.S. Constitution.

94.   Every reasonable officer would have known that failing to intervene with respect to his fellow officer's use of deadly force on a person running away that is not a person of interest and posing no threat of harm to anyone violates the U.S. Constitution.

95.   DEPUTY ERIC WHEELER observed and was in a position to intervene to stop DEPUTY JAMES MONTIEL use of excessive and unreasonable deadly force against SALAYTHIS MELVIN.

96.   Every reasonable officer would have known that failing to immediately render emergency aid to someone who poses no threat of harm and on

whom a fellow officer had used lethal force violates the Fourth and Fourteenth Amendments of the U.S. Constitution.

97. DEPUTY ERIC WHEELER 's conduct was objectively unreasonable.

98. As a result of DEPUTY ERIC WHEELER 's conduct, SALAYTHIS MELVIN was shot in the back by DEPUTY JAMES MONTIEL, experienced severe pain and suffering and emotional distress, and died.

99. As a direct and proximate result of these wrongful acts and omissions, SALAYTHIS MELVIN'S next of kin have suffered pecuniary loss, including medical and funeral expenses, loss of kinship, aid, counsel, guidance, advice, assistance, and protection and support.

100. The acts and omissions of DEPUTY ERIC WHEELER were intentional, wanton, malicious, reckless, oppressive, and/ or showed callous indifference to the federally protected rights of SALAYTHIS MELVIN.

WHEREFORE, PLAINTIFF, MICHELIN D. MCKEE, as Personal Representative of the Estate of SALAYTHIS MELVIN, demands judgment against Defendant, DEPUTY ERIC WHEELER for compensatory and punitive damages, costs, disbursements, attorney's fees, interest and for any other relief that the Court deems fair and just.

## COUNT IV
## 42 U.S.C. § 1983 - FOURTH AMENDMENT AND FOURTEENTH AMENDMENT

(Plaintiff, MICHELIN D. MCKEE, as Personal Representative of the Estate of SALAYTHIS MELVIN claim against Defendant, DEPUTY JOHN DOE I, in his individual capacity)

101. COMES NOW, Plaintiff, by and through its undersigned counsel, and sues Defendant DEPUTY JOHN DOE I, in his individual capacity and in support thereof, states as follows:

102. Plaintiff realleges the allegations contained in paragraphs 1 through 65, as if fully set forth herein.

103. The conduct of DEPUTY JOHN DOE I violated the U.S. Constitution.

104. At all material times, DEPUTY JOHN DOE I was acting under the color of state law as an agent and employee of the Orange County Sheriff's Office.

105. At all material times, DEPUTY JOHN DOE I was acting in the course and scope of his duties as an Orange County Sheriff's Deputy at the time he stood by while JAMES MONTIEL shot and killed Salaythis Melvin.

106. At all material times, DEPUTY JOHN DOE I had no reason to believe that he or JAMES MONTIEL were in imminent danger or fear of imminent bodily harm from Salaythis Melvin who was running away in fear and posed no threat.

107. Every reasonable officer would have known that using deadly force on a person that is not a suspect and is running away and posing no threat of

harm to anyone constitutes excessive force in violation of the U.S. Constitution.

108. Every reasonable officer would have known that failing to intervene with respect to his fellow officer's use of deadly force on a person running away that is not a person of interest and posing no threat of harm to anyone violates the U.S. Constitution.

109. DEPUTY JOHN DOE I observed and was in a position to intervene to stop DEPUTY JAMES MONTIEL use of excessive and unreasonable deadly force against SALAYTHIS MELVIN.

110. Every reasonable officer would have known that failing to immediately render emergency aid to someone who poses no threat of harm and on whom a fellow officer had used lethal force violates the Fourth and Fourteenth Amendments of the U.S. Constitution.

111. DEPUTY JOHN DOE I 's conduct was objectively unreasonable.

112. As a result of DEPUTY JOHN DOE I 's conduct, SALAYTHIS MELVIN was shot in the back by DEPUTY JAMES MONTIEL, experienced severe pain and suffering and emotional distress, and died.

113. As a direct and proximate result of these wrongful acts and omissions, SALAYTHIS MELVIN'S next of kin have suffered pecuniary loss,

including medical and funeral expenses, loss of kinship, aid, counsel, guidance, advice, assistance, and protection and support.

114.   The acts and omissions of DEPUTY JOHN DOE I were intentional, wanton, malicious, reckless, oppressive, and/ or showed callous indifference to the federally protected rights of SALAYTHIS MELVIN.

WHEREFORE, PLAINTIFF, MICHELIN D. MCKEE, as Personal Representative of the Estate of SALAYTHIS MELVIN, demands judgment against Defendant, DEPUTY JOHN DOE I for compensatory and punitive damages, costs, disbursements, attorney's fees, interest and for any other relief that the Court deems fair and just.

## COUNT V
## 42 U.S.C. § 1983 - FOURTH AMENDMENT AND FOURTEENTH AMENDMENT

(Plaintiff, MICHELIN D. MCKEE, as Personal Representative of the Estate of SALAYTHIS MELVIN claim against Defendant, DEPUTY JOHN DOE II, in his individual capacity)

115.   COMES NOW, Plaintiff, by and through its undersigned counsel, and sues Defendant DEPUTY JOHN DOE II, in his individual capacity and in support thereof, states as follows:

116.   Plaintiff realleges the allegations contained in paragraphs 1 through 65, as if fully set forth herein.

117.   The conduct of DEPUTY JOHN DOE II violated the U.S. Constitution.

118. At all material times, DEPUTY JOHN DOE II was acting under the color of state law as an agent and employee of the Orange County Sheriff's Office.

119. At all material times, DEPUTY JOHN DOE II was acting in the course and scope of his duties as an Orange County Sheriff's Deputy at the time he stood by while JAMES MONTIEL shot and killed Salaythis Melvin.

120. At all material times, DEPUTY JOHN DOE II had no reason to believe that he or JAMES MONTIEL were in imminent danger or fear of imminent bodily harm from Salaythis Melvin who was running away in fear and posed no threat.

121. Every reasonable officer would have known that using deadly force on a person that is not a suspect and is running away and posing no threat of harm to anyone constitutes excessive force in violation of the U.S. Constitution.

122. Every reasonable officer would have known that failing to intervene with respect to his fellow officer's use of deadly force on a person running away that is not a person of interest and posing no threat of harm to anyone violates the U.S. Constitution.

123. DEPUTY JOHN DOE II observed and was in a position to intervene to stop DEPUTY JAMES MONTIEL use of excessive and unreasonable deadly force against SALAYTHIS MELVIN.

124. Every reasonable officer would have known that failing to immediately render emergency aid to someone who poses no threat of harm and on whom a fellow officer had used lethal force violates the Fourth and Fourteenth Amendments of the U.S. Constitution.

125. DEPUTY JOHN DOE II 's conduct was objectively unreasonable.

126. As a result of DEPUTY JOHN DOE II 's conduct, SALAYTHIS MELVIN was shot in the back by DEPUTY JAMES MONTIEL, experienced severe pain and suffering and emotional distress, and died.

127. As a direct and proximate result of these wrongful acts and omissions, SALAYTHIS MELVIN'S next of kin have suffered pecuniary loss, including medical and funeral expenses, loss of kinship, aid, counsel, guidance, advice, assistance, and protection and support.

128. The acts and omissions of DEPUTY JOHN DOE II were intentional, wanton, malicious, reckless, oppressive, and/ or showed callous indifference to the federally protected rights of SALAYTHIS MELVIN.

WHEREFORE, PLAINTIFF, MICHELIN D. MCKEE, as Personal Representative of the Estate of SALAYTHIS MELVIN, demands judgment against

Defendant, DEPUTY JOHN DOE II for compensatory and punitive damages, costs,

disbursements, attorney's fees, interest and for any other relief that the Court deems

fair and just.

## COUNT VI
### 42 U.S.C. § 1983 *(Monell)* - Deliberate Indifference in Training
(Plaintiff, MICHELIN D. MCKEE, as Personal Representative of the Estate of
SALAYTHIS MELVIN claim against Defendant, JOHN W. MINA, in his
official capacity as ORANGE COUNTY SHERIFF)

129.   Plaintiff realleges the allegations contained in paragraphs 1 through 65, as
if fully set forth herein.

130.   The Orange County Sheriff's Office inadequately trained Deputy James
Montiel such that he was utterly incapable of performing the job of a
Sheriff's Deputy on August 7, 2020, including by gunning down and
attempting to seize Salaythis Melvin despite the fact that he posed no threat
to Deputy Montiel, the other Deputies, or anyone else at any time.

131.   The Orange County Sheriff's Office inadequately trained Marcus Bullock,
Eric Wheeler, John Doe I, and John Doe II such that they were utterly
incapable of performing their job as Sheriff's Deputies on August 7, 2020,
including by failing to stop James Montiel from seizing and shooting
Salaythis Melvin in the back when he exhibited no reason to be seized or
justification for the use of deadly force.  Marcus Bullock, Eric Wheeler,
John Doe I, and John Doe II stood by and did nothing while James Montiel

shot and killed Salaythis Melvin despite the fact that he posed no threat to James or anyone else at any time.

132.   The Orange County Sheriff's Office has a policy, pattern, and practice of inadequately training sheriff's deputies to perform the job, including by inadequately training them on proper use of force. Indeed, the Orange County Sheriff's Office's use of force policy did not require Deputy Montiel to use other reasonable means of seizure or force. Accordingly, the Orange County Sheriff's Office's policy and training calls for deadly force on a person running even if they are not a suspect and pose no threat of harm to the deputy or anyone else.

133.   The Orange County Sheriff's Office, under color of law, failed to provide adequate training to its officers regarding procedures and methods to avoid the infliction of deadly force on a person who is not posing a threat and not the subject of their investigation. The procedures and methods as to which the Orange County Sheriff's Office failed to provide adequate training include, but are not limited to, the following:

   a.  the proper and reasonable procedures for conducting a foot pursuit;

   b.  the proper and reasonable procedures to ensure that a supervisor is in charge during the execution of a warrant where there are other parties

present that are not the target od the warrant to make sure the supervisor properly coordinates, manages, and oversees any possible pursuits;

c.  the proper and reasonable procedures for identifying and assessing a scene.

d.  prior to restraining and making physical contact with a suspect;

e.  the proper and reasonable procedures to not pursue person that are not suspects and are not posing threats who may be in fear because law enforcement officers are not immediately identifiable as law enforcement officers and prevent causing those persons great bodily injury or death;

f.  the proper and reasonable procedures to be followed when approaching a person that is not a suspect they believe to be armed;

g.  the proper and reasonable procedures for taking control of an arrest scene involving multiple law enforcement officers and ensuring that one officer serves as the primary officer or supervisor;

h.  the proper and reasonable procedures to be followed with respect to the use of less than lethal force;

i.  the proper and reasonable procedures to be followed with respect to the use of lethal force;

j.  the proper and reasonable procedures for de-escalation prior to the use of lethal force including, without limitation, the need to ensure that law enforcement officers properly identify themselves when they are driving undercover vehicles and there is a high probability that prior to exiting this vehicle suspects and non-suspects will not know that law enforcement officers are present;

k.  the proper and reasonable procedures to be followed by an officer in preparing to fire his or her weapon;

l.  the proper and reasonable procedures to be followed to avoid contagious fire;

m. the proper and reasonable procedures to be followed to ensure that medical assistance is provided to a suspect following the use of lethal force; and

n.  the proper and reasonable procedures to be followed with respect to the use of issued body worn cameras, including, without limitation, when they should be worn, activated, and de-activated.

134.  Proper training in one or more of the procedures listed in the above paragraph would have prevented the killing of Salaythis Melvin and could, and should, have been implemented by the Orange County Sheriff's

Office. James Montiel, Marcus Bullock, Eric Wheeler, John Doe I, and John Doe II could, and should, have been trained in those procedures.

135.   These same training failures explain why Deputies Marcus Bullock, Eric Wheeler, John Doe I, and John Doe II did nothing to intervene in Montiel's use of lethal force when no threat was posed.

136.   The Orange County Sheriffs Office fosters and encourages policy to unlawfully detain individuals that are with suspects that have warrants in order to question those individuals. With no regard to violating those individuals' constitutionals rights.

137.   The Orange County Sheriff's Office's failure to adequately train in these respects constituted a deliberate indifference to the constitutional rights of citizens like Salaythis Melvin.

138.   As a result of the Orange County Sheriff's Office's failure to adequately train in these respects, Salaythis was shot in the back, suffered severe pain and suffering and emotional distress, and died.

139.   The Orange County Sheriffs Office had knowledge of an obvious risk to the constitutional rights of persons with whom the Warrants Unit came into contact with that is why some of the officers in the unit either did not have body cameras or their cameras mysteriously did not capture the footage.

140.   There have been several deaths caused at the hands of this unit and a lot of the incidents have not been captured on the officer's body worn cameras because either they did not have the camera on, or the camera was not functioning properly.

141.   As a direct and proximate result of the policies, patterns, practices, and/ or customs of the Orange County Sheriff's Office, Salaythis Melvin's next of kin have suffered pecuniary loss, including medical and funeral expenses, loss of kinship, aid, counsel, guidance, advice, assistance, and protection and support.

142.   The Orange County Sheriff's Office acted under the color of state law to deprive Salaythis Melvin of his rights under the U.S. Constitution. As such, the Orange County Sheriff's Office has violated 42 U.S.C. § 1983.

WHEREFORE, PLAINTIFF, MICHELIN D. MCKEE, as Personal Representative of the Estate of SALAYTHIS MELVIN, demands judgment against Defendant, JOHN W. MINA, in his official capacity as ORANGE COUNTY SHERIFF for compensatory damages, costs, disbursements, attorney's fees, interest and for any other relief that the Court deems fair and just.

### COUNT VII
### UNREASONABLE SEARCH AND SEIZURE:
### CONSPIRACY TO VIOLATE CIVIL RIGHTS

(Plaintiff, MICHELIN D. MCKEE, as Personal Representative of the Estate of SALAYTHIS MELVIN claim against Defendant, DEPUTY JAMES MONTIEL MARCUS BULLOCK, ERIC WHEELER, JOHN DOE I, AND JOHN DOE II)

143. Paragraphs 1 through 65 above are realleged and incorporated by reference herein.

144. Defendants, DEPUTY JAMES MONTIEL MARCUS BULLOCK, ERIC WHEELER, JOHN DOE I, AND JOHN DOE II combined, conspired, confederated, and agreed with each other to violate Plaintiffs' rights to be free from unreasonable searches and seizures under the Fourth and Fourteenth Amendments to the United States Constitution.

145. As a direct and proximate results of the Defendants' actions, SALAYTHIS MELVIN was shot in the back and experienced severe pain and suffering and emotional distress and died.

146. As a direct and proximate result of these wrongful acts and omissions, SALAYTHIS MELVIN'S next of kin have suffered pecuniary loss, including medical and funeral expenses, loss of kinship, aid, counsel, guidance, advice, assistance, and protection and support.

147. The acts and omissions of Defendants' were intentional, wanton, malicious, reckless, oppressive, and/ or showed callous indifference to the federally protected rights of SALAYTHIS MELVIN.

WHEREFORE, PLAINTIFF, MICHELIN D. MCKEE, as Personal Representative of the Estate of SALAYTHIS MELVIN, demands judgment against Defendants, DEPUTY JAMES MONTIEL MARCUS BULLOCK, ERIC WHEELER, JOHN DOE I, AND JOHN DOE II for compensatory and punitive damages, costs, disbursements, attorney's fees, interest and for any other relief that the Court deems fair and just.

## STATE LAW CLAIMS

### COUNT VIII
### BATTERY

(Plaintiff, MICHELIN D. MCKEE, as Personal Representative of the Estate of SALAYTHIS MELVIN claim against Defendant, DEPUTY JAMES MONTIEL)

148.   Plaintiff realleges the allegations contained in paragraphs 1 through 65, as if fully set forth herein.

149.   Defendant, DEPUTY JAMES MONTIEL 's conduct resulted in a harmful or offensive contact with SALAYTHIS MELVIN'S person.

150.   Defendant, DEPUTY JAMES MONTIEL 's harmful or offensive contact with SALAYTHIS MELVIN was intentional.

151.   Defendant, DEPUTY JAMES MONTIEL's harmful or offensive contact with SALAYTHIS MELVIN was unjustified, unpermitted, and made without SALAYTHIS MELVIN consent.

152.  As a result of Defendant, DEPUTY JAMES MONTIEL's harmful or offensive contact with SALAYTHIS MELVIN, SALAYTHIS MELVIN was shot in the back, experienced severe pain and suffering and emotional distress, and died.

153.  As a direct and proximate result of these wrongful acts and omissions, SALAYTHIS Melvin's' next of kin have suffered pecuniary loss, including medical and funeral expenses, loss of kinship, aid, counsel, guidance, advice, assistance, and protection and support.

154.  The acts and omissions of Defendant, DEPUTY JAMES MONTIEL were intentional, wanton, malicious, reckless, oppressive, and/ or showed callous indifference to the federally protected rights of SALAYTHIS MELVIN.

WHEREFORE, Plaintiff MICHELIN D. MCKEE, as Personal Representative of the Estate of SALAYTHIS MELVIN, demands judgment against Defendant, DEPUTY JAMES MONTIEL for compensatory damages, costs, disbursements, attorney's fees, interest and for any other relief that the Court deems fair and just.

## EMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury of all issues so triable.

Dated this 30th day of June, 2021.

Attorney for PLAINTIFF

*/s/ Bradley N. Laurent*
**BRADLEY N. LAURENT, ESQ.**
Florida Bar Number: 0010530
8615 Commodity Circle, Unit 6
Orlando, Florida 32819
Telephone: (407) 246-0077
Facsimile: (407) 246-0078
Email:  bnl@fighting4ulaw.com
Attorney for PLAINTIFF


*/s/ Carlus Haynes*
**CARLUS HAYNES, ESQ.**
Florida Bar Number: 0935611
8615 Commodity Circle, Unit 6
Orlando, Florida 32819
Telephone: (407) 246-0077
Facsimile: (407) 246-0078
Email:  champ@fighting4ulaw.com