UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CASE NO.: 6:21-cv-01085-CEM-EJK

MICHELIN D. MCKEE, as Personal
Representative of the Estate of
SALAYTHIS MELVIN, the
Deceased,

    Plaintiff,

vs.

DEPUTY JAMES MONTIEL, in his
individual capacity and as an agent of
Orange County Sheriff's Office;
DEPUTY MARCUS BULLOCK, in
his individual capacity and as an
agent of Orange County Sheriff's
Office;
DEPUTY ERIC R. WHEELER, in his
individual capacity and as an agent of
Orange County Sheriff's Office;
DEPUTY JOHN DOE I, in his
individual capacity and as an agent of
Orange County Sheriff's Office;
DEPUTY JOHN DOE II, in his
individual capacity and as an agent of
Orange County Sheriff's Office;
JOHN W. MINA, in his official
capacity as Orange County Sheriff,

    Defendants.
_____/

**DEFENDANTS, SHERIFF JOHN MINA, DEPUTY MARCUS BULLOCK AND DEPUTY ERIC WHEELER'S OPPOSED MOTION TO STAY THE PROCEEDINGS PENDING RESOLUTION OF STATE CRIMINAL INVESTIGATION AND ADMINISTRATIVE REVIEW**

Defendants, Sheriff John Mina in his official capacity as Sheriff of Orange County, Florida, Deputy Marcus Bullock in his individual capacity, and Deputy Eric Wheeler in his individual capacity, by and through undersigned counsel, hereby file their Motion to Stay the Proceedings Pending Resolution of State Criminal Investigation Administrative Review and in support thereof state as follows:

## INTRODUCTION

This is a civil rights action stemming from the shooting death of Salaythis Melvin by Defendant Deputy James Montiel on August 7, 2020. The Complaint describes the serving of an arrest warrant outside of the Florida Mall. Upon seeing the Deputies (dressed in plain clothes and driving unmarked vehicles), Mr. Melvin allegedly took headlong flight and was shot in the back by Deputy Montiel. Mr. Melvin later died from his injuries.[1]

Every officer-involved shooting resulting in a death is automatically investigated by the Florida Department of Law Enforcement ("FDLE"). Once the investigation has been completed, the investigative files and findings of the investigation are turned over to the State Attorney's Office ("SAO") for review. The SAO must ultimately decide whether to file criminal charges or clear the officer of criminal liability. Once the criminal investigation is complete, the Orange County

---

[1] These alleged facts will be referred to generally herein as "the shooting."

Sheriff's Office ("OCSO") can then complete its administrative Professional Standards review into whether any OCSO employee violated department policy in connection with the officer-involved shooting and what, if any, disciplinary action should be taken.

As of the date of this filing, the FDLE has completed its investigation but the SAO investigation and review remains ongoing.[2] Pursuant to Florida and federal common law, all documentation generated as a result of the investigation are privileged and not currently subject to disclosure in this lawsuit including all physical evidence gathered at the scene. Moreover, it is currently a criminal offense for any of the Defendants to disclose any information obtained pursuant to the FDLE's or OCSO's investigations in connection with the shooting. Accordingly, until the SAO has rendered a charging decision and the OCSO has completed is internal administrative review, none of the Defendants will be able to meaningfully engage in discovery, whether by deposition, interrogatories, or document requests to the extent that they cover material that resulted from, or were created in response to, the shooting. The information vacuum will result in prejudice to Plaintiff who will be forced to prosecute her case without the benefit of any documents, reports, or evidence resulting from the shooting. The Defendants will similarly be prejudiced

---

[2] See *State Attorney Worrell started investigation into Salaythis Melvin shooting 'from the beginning,' family lawyers say*, April 27, 2021 *available at* https://www.orlandosentinel.com/news/breaking-news/os-ne-salaythis-melvin-investigation-update-20210427-qcxtbq7emreetiydmpl4jju6c4-story.html.

in their ability to support their respective entitlements to qualified immunity which will all but eliminate their chances of being granted summary judgment.

## **RELEVANT ALLEGATIONS IN THE COMPLAINT**

Plaintiff alleges that Deputy Bullock and Deputy Wheeler:

1. "conspired and came up with a plan" to violate Mr. Melvin's civil rights. [Doc. 1, Complaint, ¶¶ 18, 143-47];

2. threatened to shoot Mr. Melvin after he had been shot by Defendant, Deputy Montiel instead of rendering timely first aid to Mr. Melvin even though he was "clearly in distress and was not a threat." [Doc. 1, ¶¶ 44-45];

3. failed to intervene to stop Deputy Montiel from using unjustified deadly force on Mr. Melvin even though they were in a position to do so. [Doc. 1, ¶¶ 46-47, 81, 95].

Plaintiff alleges that Sheriff Mina has implemented policies that:

1. allow Deputies to execute warrants in undercover vehicles and without unforms …" [Doc. 1 ¶ 51];

2. permit Deputies to execute warrants and surveille suspects without the use of cameras. [Doc. 1 ¶ 53].

Plaintiff has further alleged that Sheriff Mina was deliberately indifferent in the training of Deputy Montiel allegedly leaving him "utterly incapable of

performing the job" such that he gunned down Mr. Melvin despite the fact that he posed no threat to anyone at any time. [Doc. 1 ¶ 130]. Sheriff Mina was also allegedly deliberately indifferent in the training of Deputy Bullock and Deputy Wheeler allegedly leaving them utterly incapable of intervening to stop Deputy Montiel from seizing and shooting Mr. Melvin "in the back when he exhibited no reason to be seized or justification for the use of deadly force." [Doc. 1 ¶ 131].

The Florida Department of Law Enforcement conducted a Use of Force Investigation (OR-27-0382) in connection with the shooting of Mr. Melvin and forwarded the investigation to the State Attorney for the 9th Judicial Circuit. The matter is currently under investigation and review for a determination of whether to file criminal charges in connection with the shooting of Mr. Melvin and no decision has been announced by the State Attorney.

A temporary stay should be granted to Sheriff Mina, Deputy Marcus Bullock, and Deputy Eric Wheeler for the following reasons.

## ARGUMENT

District courts are given "broad discretion over the management of pretrial activities, including discovery and scheduling." *Johnson v. Bd. of Regents of Univ. of Ga.*, 263 F.3d 1234, 1269 (11th Cir. 2001). "A district court is empowered to stay its own proceedings for purposes of conserving judicial resources." *Landis v. N. Am.*

*Co.*, 299 U.S. 248, 254 (1936); *Ortega Trujillo v. Conover & Co. Commc'ns, Inc.*, 221 F.3d 1262, 1264 (11th Cir. 2000). "A stay sometimes is authorized simply as a means of controlling the district court's docket and of managing cases before the district court." Ortega Trujillo, 221 F.3d at 1264 (citing *Clinton v. Jones*, 520 U.S. 681, 117 S. Ct. 1636, 1650 (1997) (discussing district court's "broad discretion to stay proceedings as an incident to its power to control its own docket"). So long as a stay is neither "immoderate" nor indefinite, a stay is appropriate in the interest of judicial convenience. *Ortega Trujillo*, 221 F.3d 1262, 1262 (providing that an immoderate stay will expire within reasonable time limits).

A court is not required to stay a civil proceeding merely because of the existence of a related criminal proceeding, and a criminal defendant's "blanket assertion" of his Fifth Amendment privilege against self-incrimination "is an inadequate basis for the issuance of a stay." *United States v. Lot 5, Fox Grove, Alachua Cty., Fla.*, 23 F.3d 359, 364 (11th Cir. 1994). "Rather, a court must stay a civil proceeding pending resolution of a related criminal prosecution only when 'special circumstances' so require in the 'interests of justice.'" *Id.* (quoting *United States v. Kordel*, 397 U.S. 1, 12, & n.27 (1970)); *Pellegrino v. Wengert*, 147 F. Supp.3d 1379, 1381 (S.D. Fla. 2015).

### I. Documents and Information Integral to a Resolution of this Lawsuit are Exempt from Disclosure Due to the Ongoing Investigation

"While Florida has a strong public policy in favor of open government, the sanctity of police records compiled during a criminal investigation also has a long heritage in Florida." *Barfield v. City of Ft. Lauderdale Police Dep't*, 639 So. 2d 1012, 1014 (Fla. 4th DCA 1994); *see also City of Riviera Beach v. Barfield,* 642 So. 2d 1135, 1136 (Fla. 4th DCA 1994) ("Although Florida maintains a strong public policy in favor of open government, the critical importance of preserving the confidentiality of police records surrounding and compiled during an active criminal investigation remains of significant concern."). Consistent with Florida's policy of preserving the confidentiality of police records, "[a]ctive criminal intelligence information and active criminal investigative information are exempt from s. 119.07(1) and s. 24(a), Art. I of the State Constitution." Fla. Stat. § 119.071(2)(c)(1). "The purpose of the statute is to prevent premature public disclosure of criminal investigative information since disclosure could impede an ongoing investigation." *White v. City of Fort Lauderdale*, 2009 U.S. Dist. LEXIS 35984, at *8 (S.D. Fla. Apr. 10, 2009) (citing *Barfield*, 642 So.2d at 1037). The definition of "active" as used in Fla. Stat. § 119.071(2)(c)(1) is broad and it exempts disclosure any time an "investigation is proceeding in good faith, and the state attorney or grand jury will reach a determination in the foreseeable future …". *Barfield*, 642 So.2d at 1017.

7

Thus, for an investigation to be "active" means simply that "an arrest or prosecution may result, not that it must." *Id.* Here, the state investigation into the shooting remains active and the SAO has made no final determination as of yet. Accordingly, much of the information and many of the crucial documents that are of the utmost relevance to this case (hereinafter "Material Evidence") are exempt from public disclosure under Florida law.

Moreover, even if the SAO clears Deputy Montiel, an OCSO Professional Standards review will need to be completed with the benefit of the FDLE and SAO's investigations. Until such time as the professional standards review is complete, all of the documentation, reports and evidence relating to the shooting will remain exempt from public disclosure under Florida law.

> A complaint filed against a law enforcement officer or correctional officer with a law enforcement agency or correctional agency ***and all information obtained pursuant to the investigation by the agency of the complaint is confidential and exempt from the provisions of s. 119.07(1) until the investigation ceases to be active***, or until the agency head or the agency head's designee provides written notice to the officer who is the subject of the complaint, either personally or by mail, that the agency has either:
>
> > 1. Concluded the investigation with a finding not to proceed with disciplinary action or to file charges; or
> >
> > 2. Concluded the investigation with a finding to proceed with disciplinary action or to file charges.

Fla. Stat. § 112.533(2)(a) (emphasis added).

The Material Evidence is also subject to non-disclosure while the SAO charging decision remains pending pursuant to the federal qualified privilege protecting investigative files in an ongoing investigation. *Sirmans v. City of South Miami*, 86 F.R.D. 492 (S.D. Fla. 1980) (citing *Swanner v. United States*, 406 F.2d 716, 719 (5th Cir. 1969)); *see also In re U.S. Dep't of Homeland Security*, 459 F.3d 565, 569-70 (5th Cir. 2006) (holding district court erred in refusing to recognize law enforcement privilege); *Coughlin v. Lee*, 946 F.2d 1152, 1159 (5th Cir. 1991) ("Federal common law recognizes a qualified privilege protecting investigative files in an ongoing criminal investigation. . . ."). "The privilege applies if the government's interest in confidentiality outweighs the litigant's need for the information." *In re U.S. Dep't of Homeland Sec.*, 459 F.3d at 570. Federal courts will "consider state policies supporting a privilege in weighing the government's interest in confidentiality." *Coughlin*, 946 F.2d at 1159 (discussing the privileges applicable to confidential police investigative files). Several of the factors[3] used to

---

[3] (1) the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information; (2) the impact upon persons who have given information of having their identities disclosed; (3) the degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure; (4) whether the information sought is factual data or evaluative summary; (5) whether the party seeking the discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likel [sic] to follow from the incident question; (6) whether the police investigation has been completed; (7) whether any intradepartmental disciplinary proceedings have arisen or may arise from the investigation; (8) whether the plaintiff's suit is non-frivolous and brought in good faith; (9) whether the information sought is available through other discovery or from other sources; and (10) the importance of the in-formation sought to the plaintiff's case.

*Sirmans*, 86 F.R.D. at 495.

determine applicability of the police investigative privilege counsel in favor of non-disclosure while the SOA investigation is pending.

First, as discussed above, a state investigation into the subject shooting remains ongoing insofar as the SAO is currently reviewing the FDLE investigative report along with all other evidence in deciding whether to bring criminal charges against Deputy Montiel. An early release of the Material Evidence prior to a charging decision could hinder the SAO's investigation. Although it is impossible to know exactly how a hasty release of the Material Evidence could have adverse impacts, it is possible that such a release could influence witness and cause them to give statements or testimony that conforms to what has been released rather than their own personal recollection of events. Moreover, the OCSO Professional Standards Department will not complete its own administrative investigation until the SAO has made a charging decision. An early release of the Material Evidence could chill government self-oversight by basing its decision-making process on the community's visceral and emotional reaction to a partial evidentiary record rather than a reasoned application of all the facts to the law and department policies.

Critically, Plaintiff will not be prejudiced by a stay. While Plaintiff has a recognized interest in litigating her case in a timely fashion, as long as the state investigation remains "active," Plaintiff will not have access to the Material Evidence, thereby forcing her to prosecute her case without the benefit of the

Material Evidence. However, if the requested stay is granted, Plaintiff will be able to litigate her case from start to finish with the full benefit of the Material Evidence once the stay is removed. *See Barfield*, 639 So. 2d at 1018 ("[T]his is not a situation where the information sought will remain permanently confidential. Rather, once the investigations are concluded, if no charges are filed, the records would cease to be 'active' and thus subject to disclosure.").

In sum, Florida and federal common law prevent Plaintiff from discovering the Material Evidence that is critical to litigating and adjudicating her claims until the SAO and the OCSO have completed their investigations. This information vacuum will prevent this case from being litigated efficiently on all of the available facts, and likely strain judicial and party resources unnecessarily.

## II.   Special Circumstances Favor a Stay

In assessing whether a stay is appropriate, the Court must "weigh competing interests and maintain an even balance." *Prosper v. Martin*, 239 F. Supp. 3d 1347, 1349 (S.D. Fla. Mar 10, 2017) (citing *Winn-Dixie Stores, Inc. v. Big Lots Stores, Inc.*, No. 9:11-80638-DMM, 2012 U.S. Dist. LEXIS 196985, at *9 (S.D. Fla. May 11, 2012) (quoting *Landis*, 299 U.S. at 255)). Several factors may be considered when balancing the interests of the parties:

> (1) the interest of the plaintiffs in proceeding expeditiously with this litigation or any particular aspect of it, and the potential prejudice to

plaintiffs of a delay; (2) the burden which any particular aspect of the proceedings may impose on defendants; (3) the convenience of the court in the management of its cases, and the efficient use of judicial resources; (4) the interests of persons not parties to the civil litigation; and (5) the interest of the public in the pending civil and criminal litigation.

*Golden Quality Ice Cream Co., Inc. v. Deerfield Specialty Papers, Inc.*, 87 F.R.D. 53, 56 (E.D. Pa. 1980). An additional factor (overlap between the criminal and civil action) has been identified and described by at least one court as "the most important threshold issue in determining whether to grant a stay." *Dominguez v. Hartford Fin. Servs. Group, Inc.*, 530 F. Supp. 2d 902, 907 (S.D. Tex. 2008). Here, the factors weigh in favor of granting a stay. Preliminarily, there is complete overlap between the facts of this case and the active criminal investigation of the shooting. While this case arguably concerns additional issues less relevant to the criminal investigation (such as OCSO training policies), all of the considerations made in determining whether the shooting was justified from a criminal standpoint are equally as relevant to a determination of whether Deputy Montiel's use of force was justified under the Fourth Amendment.

    **a.    Plaintiff will not be Prejudiced by a Stay**

Plaintiff has alleged a full battery of federal civil rights claims against three named Deputies, two John Doe Deputies, and the Sheriff of Orange County. These claims encompass not only the alleged conduct of the Deputies on the scene but also Sheriff Mina's allegedly deficient and unconstitutional training policies. The

Complaint also purports to allege a federal civil rights conspiracy claim and a pendent Florida law claim for battery. Accordingly, Plaintiff, by filing the complaint, has preserved any claims she is likely to ever have and has done so well within the four-year limitations window for federal civil rights claims brought in a Florida federal court predicated on personal injury. While the Defendants cannot say for certain when the SAO will ultimately render a charging decision, such a decision is likely to come within a matter of a months given that the shooting occurred nearly one year ago. Accordingly, it is exceedingly unlikely that the statute of limitations (with more than three years remaining) will run during the requested stay. Moreover, if a stay is not granted, Plaintiff's discovery efforts to uncover the Material Evidence will be thwarted by Florida and federal common law until the state and OSCO investigations are complete.

**b.     The Defendants would be Prejudiced if a Stay is Not Granted**

So long as the Material Evidence is subject to non-disclosure under Florida and federal common law, the Defendants will continue to be deprived of information that is vital to a determination of whether any of the Defendant Deputies committed any constitutional violations, and by extension, whether any of the Defendant Deputies are entitled to Qualified Immunity. For example, without the benefit of the FDLE investigation report(s) and all associated materials, the Defendants (and Plaintiff too) will be unaware of the substance of any witness statements given to the

FDLE and will therefore be unable to properly examine these witnesses at deposition or trial on the veracity of any such prior statements. If the Defendants are forced to litigate this case in an information vacuum, the prospect of conflicting witness testimony seems inevitable. Where there is conflicting testimony on material facts, this Court will deny summary judgment on the Defendants' entitlement to qualified immunity.

"Qualified immunity "represents the norm" for government officials exercising discretionary authority." *Moore v. Pederson*, 806 F.3d 1036, 1055 (11th Cir. 2015) (M. Proctor, J., concurring in part) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 807 (1982). Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation …" *Gonzalez v. Reno*, 325 F.3d 1228, 1233 (11th Cir. 2003). "Qualified immunity is an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Scott v. Harris*, 550 U.S. 372, 376 n.2 (2007) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Thus, denial of the proposed stay, while Defendants remain deprived of information vital to resolving potential factual disputes, is prejudicial insofar as it is contrary to the fundamental purpose of qualified immunity which is to relieve government officials from the burden and expense of litigation that lacks merit.

The issue of whether any of the Defendant Deputies violated the Constitution or are entitled to qualified immunity is also relevant to a determination of the *Monell* claim against Sheriff Mina. A *Monell* claim is derivative of—and thus requires—an underlying constitutional violation. *Los Angeles v. Heller*, 475 U.S. 796, 799 (1986). Accordingly, Sheriff Mina, like the Defendant Deputies, will be prejudiced in his defense so long as the state investigation remains active.

Further, Florida law effectively criminalizes certain discovery in this case, not only for the Defendants, but also for the Defendants' counsel. Florida Statute § 112.533(4) states in pertinent part:

> Any person who is a participant in an internal investigation, including the complainant, the subject of the investigation and the subject's legal counsel or a representative of his or her choice, the investigator conducting the investigation, and any witnesses in the investigation, who willfully discloses any information obtained pursuant to the agency's investigation, including, but not limited to, the identity of the officer under investigation, the nature of the questions asked, information revealed, or documents furnished in connection with a confidential internal investigation of an agency, before such complaint, document, action, or proceeding becomes a public record as provided in this section commits a misdemeanor of the first degree, punishable as provided in s. 775.082 or s. 775.083.

Thus, if this case is permitted to proceed, the Plaintiff, through standard discovery requests could invite the Defendant Deputies to unwittingly violate the law.

### c. A Stay Would Not Burden the Court

"Although promptness in judicial administration is highly desirable, delay may sometimes be necessary to the mission of doing justice. We are all too often reminded that "justice delayed is justice denied." But, it is equally true that in some situations 'justice rushed is justice crushed.'" *McMullen v. Bay Ship Mgmt.*, 335 F.3d 215, 219 (3d Cir. 2003). Due to the ongoing state criminal investigation, scheduling deadlines in this case may be difficult for the Court to set. *See Prosper*, 239 F. Supp. 3d at 1349 ("Proceeding with discovery while an investigation remains open but inaccessible to the parties makes it impossible for the Court to enter a meaningful scheduling order."). Even if the Court were to enter a scheduling order, it may require subsequent revisions that cannot be done without Court approval.[4] Further, a stay would likely obviate the Court's need to intervene to resolve discovery disputes that would likely arise if discovery were permitted to proceed while the state criminal investigation is ongoing. Given the clear relevance of the Material Evidence, Plaintiff is likely to request it. However, Defendants will likely claim privilege under Florida and federal common law and cite the criminal prohibition under Florida Statute § 112.533(4). If Plaintiff moves to compel or Defendants move for a protective order, the Court will be forced to intervene. The requested stay

---

[4]*See Scheduling Preferences* available at https://www.flmd.uscourts.gov/judges/carlos-mendoza ("The parties may not extend deadlines established in the case management and scheduling order without the approval of the court.").

should eliminate the need to call on limited judicial resources to resolve such disputes. Accordingly, a stay would likely lessen the Court's burden in resolving this case.

### d. The Public Interest Weighs in Favor a Stay

While the public has an interest in having civil disputes adjudicated swiftly, the public interest in allowing a criminal investigation to run its course unimpeded by potentially prejudicial influences is greater. Further, the public has an interest in having cases decided on their merits based on all the available evidence, not just the evidence that is not obscured from public view while a criminal investigation remains ongoing. The requested stay is not indefinite and would only run through the conclusion of the SOA charging decision and the OCSO Professional Standards review. A moderate delay is justified "if the public welfare or convenience will thereby be promoted." *Landis*, 299 U.S. at 256.

## CONCLUSION

For the foregoing reasons, these Defendants respectfully request that this Court enter an Order staying the case as to Sheriff Mina, Deputy Bullock, and Deputy Wheeler until the SAO has rendered a charging decision in connection with the shooting and the OCSO has completed its Professional Standards review.

If the requested stay is granted, these Defendants will provide the Court with periodic updates at intervals of the Court's choosing on the progress (to the extent such is known) of the SAO investigation and the OCSO Professional Standards review.

### 3.01(g) CERTIFICATION

Undersigned counsel contacted Bradley Laurent, counsel for the Plaintiff via email on July 15, 2021, and advised of these Defendants' intentions to file this motion to stay. Mr. Laurent advised that Plaintiff objects to a stay of the proceedings. Bruce Bogan, counsel for Co-Defendant, Deputy Montiel also contacted Mr. Laurent via email on July 15 explaining his intention to file a motion to stay on Deputy Montiel's behalf.  Mr. Laurent indicated opposition to that motion as well.

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 19th day of July, 2021, I electronically filed the foregoing with the Clerk of the Courts by using the CM/ECF system which will send a notice of electronic filing to:  **Bradley N. Laurent, Esquire/Carlus L. Haynes, Esq**uire, Law Office of Haynes and Laurent, P.A., 8615 Commodity Circle, Unit 6, Orlando, FL  32819; and **Bruce R. Bogan Esquire,** Hilyard, Bogan & Palmer, P.A, PO Box 4973, Orlando, FL 32802-4973.

                                              s/ *Ryan Dietrich*
                                              Walter A. Ketcham, Esquire

Florida Bar No. 156630
Brian F. Moes, Esquire
Florida Bar No.  39403
George R. Dietrich, Esquire
Florida Bar No. 1007940
Ketcham, Eide, Telan, Meltz, & Wallace, P.A.
PO Box 538065
Orlando, FL  32853-8065
Phone:  (407) 423-9545
Fax:     (407) 425-7104
Email:  waketcham@ketmw.com
            bfmoes@ketmw.com
            grdietrich@ketmw.com
            enotice@ketmw.com
            aremedios@ketmw.com
Counsel for Defendants Mina, Bullock and Wheeler