UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CASE NO.: 6:21-cv-01085-CEM-EJK

MICHELIN D. MCKEE as Personal
Representative of the Estate of
Salaythis Melvin, the Deceased,

    Plaintiff,

v.

DEPUTY JAMES MONTIEL, in his Individual
Capacity and as an agent of the ORANGE COUNTY
SHERIFF'S OFFICE

_____/

## JOINT PRETRIAL STATEMENT

Pursuant to the Court's Amended Case Management and Scheduling Order

(Doc. 78), the parties submit this Joint Final Pretrial Statement.

## Meeting of Counsel

**1.  Basis for Court's Jurisdiction**:

This Court has jurisdiction pursuant to 28 U.S.C. 1331 and 1343 as Plaintiff has

asserted federal civil rights claims and state claims against the Defendant, Deputy

James Montiel under 42 U.S.C. 1983 for alleged violations of the Plaintiff's rights

under the Fourth and Fourteenth Amendments to the Constitution of the United

States and state law claims for battery. Further, this Court has supplemental

jurisdiction pursuant to 28 U.S.C. 1367 over Plaintiff's state court claims against the Defendant. Plaintiff also asserts a claim against Sheriff John Mina for an alleged failure to train deputies on the use of force.

**2. Statement of the Action:**

**a. Plaintiff's Statement:**

This is a civil action brought by the Plaintiff against Defendants in Counts I, II, IX, and XVII for Fourth and Fourteenth Amendment claims of excessive force, Fourth and Fourteenth Amendment claims of failure to render aid, a state law claim for battery, and a failure to train deputies on the use of force.[1]

On August 7, 2020, while members of the Orange County Sheriff's Office were executing a warrant on Vanshawn Sands at the Florida Mall. Deputy James Montiel shot Mr. Melvin in the back as Mr. Melvin fled. Mr. Melvin died as result of the gun shot. At the time of the shooting, Salaythis Melvin did not have a warrant for his arrest. This case is about whether Deputy Montiel's use of force violated Mr. Melvin's Fourth Amendment rights and whether Orange County Sheriff Mina failed to train his officers on the proper use of force and had policy and procedures in place regarding the proper apprehension of persons suspected

---

[1] Both parties agree to the statement in this paragraph.

of criminal wrong doing. The sole survivor to bring this action and make a claim for damages is Michelin McKee, mother of Salaythis Melvin.[2]

###### b. **Defendant Montiel's Statement**:

This is a civil action brought by the Plaintiff against Defendants in Counts I, II, IX, and XVII for Fourth and Fourteenth Amendment claims of excessive force, Fourth and Fourteenth Amendment claims of failure to render aid, a state law claim for battery, and a failure to train deputies on the use of force.

###### c. **Defendant Sheriff John Mina's Statement:**

This is an action brought by the Plaintiff against the Orange County Sheriff's Office based on allegations that the OCSO violated the U.S. Constitution by remaining deliberately indifferent to a need to improve training in the use of force after being on notice that existing training was inadequate and that without improved training excessive force violations were likely to occur. The Orange County Sheriff's Office denies these allegations.

### 3. **Statement of Each Party's Position:**

#### a. **Plaintiff:**

---

[2] Defendants object to Plaintiff's remainder of the statement of the action.

On August 7, 2020, Deputy Montiel was part of the JAM unit and operated as a supervisor that was serving an arrest warrant on Vanshawn Sands in Orange County Florida. Deputies followed Mr. Sands all morning without being detected, as part of Sheriff Mena's policy to surveil suspected or known gang members in order to obtain intel regarding their affiliates.

Between approximately 12pm and 1pm Deputies James Montiel and other members of the Orange County Sheriff's Department Warrant Unit converged at the Florida Mall near Dick's Sporting Goods attempting to execute an arrest warrant on Vanshawn Sands and also upon Mr. Christopher Bennett, where during the surveillance, one deputy identified as having an outstanding warrant for violating juvenile probation by removing an anchor monitor. The apprehension or "take down" was conducted by deputies in plain clothes driving unmarked vehicles, converging on the group at a high rate of speed.

Because Mr. Sands had recently been the victim of a drive by shooting, Mr. Sands, Mr. Melvin, and Mr. Bennett initially took evasive actions not knowing the individuals in the vehicles were law enforcement officers. Mr. Melvin past Dick's Sporting Goods away from deputies who had drawn their firearms. As he was running, a vehicle being driving by Defendant Montiel was driving directly towards Mr. Melvin, who then made a ninety degree change of direction to run away from the fast approaching vehicle. Montiel, exited his vehicle to apprehend

Mr. Melvin, and almost immediately upon existing, he shooting stance and fired his weapon multiple times, with one shot fatally wounding Mr. Melvinn who was approximately thirty to forty yards away from Montiel at the time he was shot.

At the time James Montiel shot Salaythis Melvin, 1) Montiel did not know Mr. Melvin's name, 2) Montiel did not know Mr. Melvin's status as a felon, 3) Montiel did not know if Mr. Melvin possessed a weapon's permit, 4) Mr. Melvin was not suspect in a crime or the subject of an active investigation, and 5) Mr. Melvin he did not have a warrant for his arrest.

All members in the group were detained and questioned by law enforcement, even those who did not have an active warrant. Had the JAM unit not acted in accordance with OCSO policy to follow suspect with warrants for a period of time, and not acted in accordance with OCSO policy to use force to apprehend suspects, Mr. Melvin would not have died on August 7, 2020.

Montiel did not render any aid to help Salaythis Melvin after he shot Salaythis Melvin. For several minutes, he held Mr. Melvin, a severely wounded person at gunpoint, while deputies yelled at Melvin to show his hands.

### b. Montiel:

On August 7, 2020, Deputy Montiel was part of a team tasked with apprehending Vanshawn Sands, who had a warrant for his arrest. During the

surveillance of Mr. Sands, Deputy Montiel and other members of the Orange County Sheriff's Office followed Mr. Sands and his companions – Christopher Bennett, Janai Jones, and Salaythis Melvin to the Dick's Sporting Goods at the Florida Mall. It was discovered that Christopher Bennett also had a warrant out for his arrest. A takedown order was issued as the four walked out of the Dick's Sporting Goods back into the parking lot. As deputies moved in on the group, Sands, Bennett, and Melvin began to run away. Deputy Montiel, who was around the corner of the Dick's Sporting Goods when the takedown began, turned the corner and observed Melvin running towards him with his hand on a tan firearm in his waistband. Deputy Montiel got out of his car, confronted Melvin, and ordered him to drop the gun. Melvin then turned directions and ran into the parking lot. Deputy Montiel gave chase, and continued to give Melvin orders to stop and drop the gun. Deputy Montiel observed Melvin slow down, turn his head and shoulders to the left, and look back at him. Montiel believed that Melvin was attempting to sight and fire his gun at him. Montiel, fearing for his life, fired two shots, and Melvin fell to the ground. As Melvin fell, the tan firearm in his hand fell to the ground and slid across the parking lot. Montiel then approached Melvin and gave him commands to show his hands until Melvin was secured by other deputies, who then rendered first aid.

     c. **Sheriff**:

Plaintiff's claim against Sheriff John Mina concerns the operations of the Orange County Sheriff's Office ("OCSO") as a law enforcement agency. The Orange County Sheriff's Office only employs qualified men and women of the highest integrity to serve as sworn law enforcement officers. Before being sworn into service OCSO deputies undergo a very rigorous character evaluation and must attend a state-certified law enforcement academy, commonly referred to as a "police academy," designed to provide recruits with the education, training, skills and abilities for a successful law enforcement career. Police academy recruits are trained that use of deadly force may be a deputy's first and only appropriate response when a deputy reasonably believes that his or her life is in great danger. The OCSO only hires graduates from a police academy to serve as sworn law enforcement officers. Once sworn into service, newly hired deputies are assigned to a field training officer for continued training in the field. Field training officers provide additional instruction regarding OCSO policies and procedures. Deputy James Montiel, like every other OCSO deputy, successfully completed law enforcement training at a police academy. And like every other OCSO deputy, Deputy Jame Montiel successfully completed field training under the direct oversight of a field training officer. Beyond this training the OCSO provided Deputy Montiel with in-service training every year to augment the training provided in the police academy.

7

The level of in-service training provided by the OCSO to its sworn deputies has been recognized and commended by independent agencies that review and certify law enforcement agencies, both within and without the State of Florida. One independent agency to recognize and certify the OCSO is Commission for Florida Law Enforcement Accreditation (CFA). A second accrediting organization is the Commission for the Accreditation of Law Enforcement Agencies (CALEA). The OCSO has earned and continuously maintained CFA and CALEA certification since 1996 for its adherence to national law enforcement standards concerning training, including training on use of force.

Deputy Montiel had years of experience as a sworn law enforcement officer and was well trained in the police academy, in the field, and annually by the OCSO on law and policy pertaining to the use of force.

The shooting incident was investigated the Florida Department of Law Enforcement, independent of the OCSO. Once the FDLE concluded its fact-finding investigation, the results were shared with the Office of the State Attorney. The State Attorney reviewed the FDLE's findings and concluded that Deputy Montiel's use of deadly force did not violate any law of the State of Florida. Following the State Attorney's review, the OCSO conducted its investigation to determine whether any OCSO policy violations were committed. Deputy Montiel's decision to use force in a very tense, rapidly

evolving circumstance was found to be reasonable and consistent with national standards and OCSO policy concerning the use of force.

4. **Exhibits**:

    a. **Plaintiff**

    b. **Defendant – Mina**

    c. **Defendant - Montiel**

5. **Witnesses**:

    a. **Plaintiff**

    b. **Defendant**

6. **Expert Witnesses:**

    a. **Plaintiff**

    b. **Defendant**

7. **Damages**:

    a. **Plaintiff**

*Damages for excessive force.*

Plaintiff is seeking $5,000,000.00 actual damages for this constitutional violation against James Montiel.  These include compensation for Mr. Melvin's injuries, loss of life, and the future value of the estate.

Plaintiff is seeking $8,000,000.00 in Punitive Damages to prevent the senseless loss of life of any other individual who flees from law enforcement but is not a suspect of a crime.

Plaintiff seeks all cost associated with bringing this action.  These Cost will be the actual costs incurred – amounts continue to accrue as litigation proceeds.

Plaintiff seeks imposition Attorney Fees.  Amount to be determined by the court if the Plaintiffs prevails.  Based on years of practice and experience, counsel Haynes will seek $450.00/hr. and counsel Anthony-Smith will seek $400.00 for services rendered.  Actual amount will continue to accrue as litigation proceeds.

*Damages for failure to render aid.*

Plaintiff is seeking $1,000,000 for this constitutional violation against James Montiel.  These include compensation for Mr. Melvin's injuries, loss of life, and the future value of the estate.

Plaintiff is seeking $1,000,000.00 in Punitive Damages to prevent the senseless loss of life of any other individual who flees from law enforcement but is not a suspect of a crime.

Plaintiff seeks all cost associated with bringing this action.  These Cost will be the actual costs incurred – amounts continue to accrue as litigation proceeds.

Plaintiff seeks imposition Attorney Fees.  Amount to be determined by the court if the Plaintiffs prevails.  Based on years of practice and experience, counsel Haynes will seek $450.00/hr. and counsel Anthony-Smith will seek $400.00 for services rendered.  Actual amount will continue to accrue as litigation proceeds.

*Damages for state law battery.*

Plaintiff is seeking $200,000 for this claim against DEPUTY JAMES MONTIEL. These include compensation for Mr. Melvin's injuries, loss of life, and the future value of the estate.

Plaintiff is seeking $100,000.00 in Punitive Damages to prevent the senseless loss of life of any other individual who flees from law enforcement but is not a suspect of a crime.

Plaintiff seeks all cost associated with bringing this action.  These Cost will be the actual costs incurred – amounts continue to accrue as litigation proceeds.

*Damages JOHN W. MINA, in his official capacity as ORANGE COUNTY SHERIFF for negligent training, policy and procedure causing constitutional injury.*

Plaintiff is seeking $200,000.00 for this constitutional violation against Sheriff Mena.  These include compensation for Mr. Melvin's injuries, loss of life, and the future value of the estate.

Plaintiff is seeking $1,000,000.00 in Punitive Damages to prevent the senseless loss of life based on untrained deputies in the area of apprehension of potential suspects, excessive use of force, and effectuating arrest warrants on known individuals without unreasonable delay.

Plaintiff seeks all cost associated with bringing this action.  These Cost will be the actual costs incurred – amounts continue to accrue as litigation proceeds.

Plaintiff seeks imposition Attorney Fees.  Amount to be determined by the court if the Plaintiffs prevails.  Based on years of practice and experience, counsel Haynes will seek $450.00/hr. and counsel Anthony-Smith will seek $400.00 for services rendered.  Actual amount will continue to accrue as litigation proceeds.

**8. Depositions**:

The Parties expect to call all witnesses live and do not currently anticipate reading deposition testimony except for impeachment purposes.

    **a.**    **Plaintiff**

    **b.**    **Defendants**

**9. Statement of Admitted Facts**:

a. On August 7, 2020, Deputy Montiel was a part of the JAM unit and operated as a supervisor that was serving an arrest warrant on Vanshawn Sands in Orange County Florida.

b. John Mina is the Sheriff of Orange County, Florida, and a constitutional officer under the laws of the State of Florida.

c. On August 7, 2020, Deputy Montiel was part of the Juvenile Arrest and Monitor (JAM) Unit.[3]

d. On August 7, 2020, Vanshawn Sands had an active warrant out for his arrest.

e. At all times material to this incident, Deputy Montiel was lawfully employed by the Orange County Sheriff's Office as sworn law enforcement officer.

f. Michelin McKee is the mother of Salaythis Melvin.

g. Salaythis Melvin is only survived by his mother, Michelin McKee.

10. **Agreed Principles of Law**:

a. Plaintiff's 42 U.S.C. 1983 claims in Counts I is governed by the Fourth Amendment to the United States Constitution and all applicable case law.

b. Plaintiff's Claims in Count II are governed by the Fourteenth Amendment to the United States Constitution and all applicable case law.

c. Plaintiff's Florida state law claim in Count XVII is governed by substantive Florida law.

---

[3] (Plaintiff proposes adding the following: "that was executing an arrest warrant for Vanshawn Sands.")

d.  Law enforcement officers sued in their individual capacity are entitled to qualified immunity from constitutional claims insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable officer would have known.

11. **Issues of Fact**:

a.  **Plaintiff**:

    i.  Whether Montiel was justified in shooting Salaythis Melvin in the back while Melvin was running and not posing a threat?

    ii.  Whether the act of fleeing indicative of non-violence?

    iii.  Whether Mr. Melvin ever possessed the firearm or did it remain in the holster?

    iv.  Whether Montiel was trying to apprehend Mr. Melvin at the time of the shooting or whether he possessed a reasonable fear that Mr. Melvin would cause great bodily harm to Montiel or other deputies.

    v.  Whether Montiel rendered aid or was excused from rendering aid.

    vi.  Whether OCSO Deputies failed to be properly trained regarding use of force?

vii. Whether the apprehension policy of felony suspect with an active warrant policy caused Mr. Melvin's death?

viii. Whether OCSO failed to train Deputies with regard to the proper use of deadly force while on duty.

b. **Defendants**:

i. Whether Melvin resisted Deputy Montiel's lawful commands.

ii. Whether Deputy Montiel had reasonable suspicion or arguable probable cause to detain Melvin.

iii. Whether Deputy Montiel had arguable probable cause to believe Melvin presented a threat of death or great bodily harm.

iv. Whether Deputy Montiel's use of force was objectively reasonable.

v. Whether in regards to the state law claims did Deputy Montiel act in bad faith, with malicious purpose, or with wanton and willful disregard of human rights, safety, or property as described in Fla. Stat. §768.28(9)(a).

vi. Whether the force used by Deputy Montiel was justified because such force was reasonably believed to be necessary to protect his life under Florida Statute 776.012.

     vii.  Whether the Orange County Sheriff's Office was on notice of a need to improve training for OCSO deputies on the use of force and remained deliberately indifferent to the need to train knowing that a use of force constitutional violation was likely to reoccur.

**12. Issues of Law**:

a.  Whether Deputy Montiel is entitled to qualified immunity.

b.  Whether there was arguable or actual probable cause for Deputy Montiel to attempt to detain Melvin.

c.  Whether Melvin was subjected to the use of excessive force under the circumstances.

d.  Whether Deputy Montiel acted in bad faith, with malicious purpose, or with wanton and willful disregard of human rights, safety, or property as described in Fla. Stat. §768.28(9)(a).

e.  Whether the Orange County Sheriff's Office failed to reasonably train Defendant Montiel.

f.  Whether Orange County Sheriff's Office had an expressed or implied policy regarding the apprehension of criminal suspects and the

execution of warrants, the implementation of which, caused Mr. Melvin's death.[4]

g.  Under Florida Statute 776.051(1), a person not justified in the use or threatened use of force to resist a law enforcement officer who is engaged in the execution of a legal duty, if the law enforcement officer was acting in good faith.

h.  Deputy Montiel is entitled to statutory immunity for any state law claim under F.S. 768.28(9) unless he is found to have been acting in bad faith, with malicious purpose, or with wanton and willful disregard of human rights, safety, or property as described in Fla. Stat. §768.28(9)(a).

i.  Under Florida Statute 776.012 a person is justified in using deadly force if he or she reasonably believed that the use of such force is necessary to prevent imminent death or great bodily harm to himself.[5]

j.  A Florida law enforcement officer is justified in the use of any force when necessarily committed in arresting felons fleeing from justice and the officer reasonably believes that the fleeing felon poses a threat of death or serious physical harm to the officer or others or the officer

---

[4] Per this Court's prior order, Defendants believe this issue of law is not a relevant issue to be decided in this case.
[5] For G,H,I under issues of law, the Plaintiff does not believe these are relevant issues to be decided in this case.

reasonably believes that the fleeing felon has committed a crime involving the infliction or threatened infliction of serious physical harm to another person. § 776.05(a)-(b), Fla. Stat.[6]

k.  Whether the actions of Deputy Montiel amount to deliberate indifference to the rights of Salaythis Melvin to receive emergency medical aid when suffering a serious injury at the hands of law enforcement.

l.  Whether Plaintiff, Michelin McKee, as Personal Representative of the Estate of Salaythis Melvin is entitled to relief under 42 U.S.C. §1983

13. **Pending Motions**:

a.  Plaintiff's Amended Objection to Magistrate's Order and Recommendation Denying Plaintiff's Amended Motion for Leave to File Response to Defendant Mina's Motion for Protective Order and Motion for Reconsideration of Protective Order. (Doc. 100).[7]

b.  Defendants Mina and Montiel's Joint Motion to Exclude Opinions and Testimony of Plaintiff's Expert Scott Defoe (Doc. 101).

c.  Defendant Mina's Motion for Summary Judgment (Doc. 102).

d.  Defendant Montiel's Motion for Summary Judgment (Doc. 103).

---

[6] Defendants disagree that "j" is an issue for the case as Defendant Montiel did not shoot the Plaintiff because he was a fleeing felon.

[7] Defendants do not believe Doc. 100 is a pending motion.

    e.  Plaintiff's Motion to Exclude Report and Testimony of Dr. Richard Hough (Doc. 104).

    f.  Defendant Montiel's Motion to Exclude Opinion and Testimony of Plaintiff's Expert Scott Defoe (Doc. 105).

    g.  Plaintiff's Motion to Exclude Defendant's Expert Steve Rundell (Doc. 106).

    h.  Plaintiff's Daubert Motion to Exclude Shawn Johnson (Doc. 107).

    i.  Defendant Mina's Motion in Limine (Doc. 129)

    j.  Defendant Montiel's Motion in Limine (130)

    k.  Plaintiff's Motion in Limine (To Be Filed)

    l.  Parties' Motion to permit electronic equipment (To Be Filed)

    m.  Plaintiff's Motion and Petition for *Writ of Habeas Corpus ad Testificandum* (to be filed as to Christopher Bennett).

**14. Further Settlement**:

The parties do not believe further settlement discussions would be productive given the disparity between their respective assessments of the case.

**15. Jury Instructions, Verdict Form, Voire Dire**

**16. Jury or Bench Trial**

This is a jury trial.

18

## 17. Estimated Length of Trial

Seven (7) days total.

## 18. Application of Federal Rules

There is presently no disagreement between the parties as to the application of the Federal Rules of Evidence or the Federal Rules of Civil Procedure to this action.

## 19. Rule 3.06(b)(15) Certification

In preparing this final pretrial statement, I have aimed for the just, speedy, and inexpensive resolution of this action.

Respectfully submitted this 8th day of April, 2024.

| | |
|---|---|
| _s/  Carlus Haynes_____ | _s/  Brian Moes_____ |
| Carlus Haynes, Esq. | Brian F. Moes, Esquire |
| Florida Bar No. 0935611 | Florida Bar No. 39403 |
| Haynes Law, P.A. | Orlando, FL 32801 |
| 8615 Commodity Circle, Unit 6 | Telephone: 407-843-2111 |
| Orlando, FL 32819 | Facsimile: 407-422-1080 |
| Telephone (407) 246-0077 | G. Ryan Dietrich, Esquire |
| Fax (407) 246-0078 | Florida Bar No. 1007940 |
| Email: champ@fighting4ulaw.com | DeBevoise and Poulton, P.A. |
| Attorney for Plaintiff | 1035 South Semoran Boulevard, Suite 1010, Winter Park, Florida 32792 |
| | Email: bmoes@fisherlawfirm.com |
| | grdietrich@fisherlawfirm.com |
| | Attorneys for Wheeler, Sheriff Mina, Garcia, Fisher, Rambeau, Moore & Heller |

_/s/ Bruce R. Bogan_____
Bruce R. Bogan, Esquire
Fla. Bar No. 599565

David R. Jadon, Esquire
Fla. Bar No. 1010249
Hilyard, Bogan & Palmer, P.A.
Post Office Box 4973
Orlando, FL 32802-4973
Telephone: 407-425-4251
Facsimile:  407-841-8431
Email: bbogan@hilyardlawfirm.com
          djadon@hilyardlawfirm.com
Attorneys for Defendant Montiel


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 8th day of April, 2024, a true copy hereof has been electronically filed with the Clerk of the Court using the CM/ECF system which will send notice of electronic filing to Plaintiff's counsel, **Carlus Haynes, Esquire,** Haynes Law, P.A., 8615 Commodity Circle, Unit 6, Orlando, Florida  32819, **Brian Moes, Esquire,  G. Ryan Dietrich, Esquire**, DeBevoise and Poulton, P.A., 1035 South Semoran Boulevard, Suite 1010, Winter Park, Florida 32792.

/s/ Bruce R. Bogan
Bruce R. Bogan, Esquire
Fla. Bar No. 599565
David R. Jadon, Esquire
Fla. Bar No. 1010249
Hilyard, Bogan & Palmer, P.A.
Post Office Box 4973
Orlando, FL 32802-4973
Telephone: 407-425-4251
Facsimile:  407-841-8431
Email: bbogan@hilyardlawfirm.com
          djadon@hilyardlawfirm.com
Attorneys for Defendants